IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NATERA, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEOGENOMICS LABORATORIES, INC., <br><br> Defendant. | C.A. No. 1:23-CV-629 |

**DEFENDANT NEOGENOMICS LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO MODIFY AND/OR CLARIFY**

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................ 1

II. DISCUSSION .................................................................................................... 1

    A. The Court Has Jurisdiction To Grant The Requested Relief ........................ 1

    B. The Court Should Modify Or Clarify The Scope Of The Injunction To Avoid The Unwarranted Restraint On Lawful Activity .......................... 3

    C. The Court Should Require Natera To Post Security .................................... 6

    D. Clarification Of The PI Would Advance Patient Care And Fits Within The Intended Scope Of The PI .......................................................... 9

III. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. TOL, Inc.*,
    940 F. Supp. 2d 766 (M.D. Tenn. 2013) ................................................................. 3

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    695 F. Supp. 2d 680 (S.D. Ohio 2010) ................................................................... 5

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    576 F.3d 1348 (Fed. Cir. 2009) ............................................................................... 5

*Dixon v. Edwards*,
    290 F.3d 699 (4th Cir. 2002) .................................................................................. 2

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ....................................................... 2

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*,
    2009 WL 790105 (Fed. Cir. Mar. 25, 2009) ........................................................... 1

*George Sink PA Injury Lawyers v. George Sink II Law Firm LLC*,
    2019 WL 6318778 (D.S.C. Nov. 26, 2019) ................................................... 2, 9, 10

*Greenwood County v. Duke Power Co.*,
    107 F.2d 484 (4th Cir. 1939) .................................................................................. 8

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) .......................................................................... 6, 7, 8

*Hybritech Inc. v. Abbott Laboratories*,
    849 F.2d 1446 (Fed. Cir. 1988) .............................................................................. 2

*Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*,
    2014 WL 2531973 (S.D. Cal. June 4, 2014) .......................................................... 5

*Lab. Corp. of Am. Holdings v. Kearns*,
    84 F. Supp. 3d 447 (M.D.N.C. 2015) ..................................................................... 7

*Lewis v. Tobacco Workers' Int'l Union*,
    577 F.2d 1135 (4th Cir. 1978) ................................................................................ 2

*NTP, Inc. v. Rsch. In Motion*,
    418 F.3d 1282 (Fed. Cir. 2005) .................................................................. 4, 5, 6

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ............................................................................ 9

*Power Controls Corp. v. Hybrinetics, Inc.*,
    806 F.2d 234 (Fed. Cir. 1986) ......................................................................... 2

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
    553 U.S. 617 (2008) ......................................................................................... 5

*Riles v. Shell Exploration and Production Co.*,
    298 F.3d 1302 (Fed. Cir. 2002) ....................................................................... 3

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006) ....................................................................... 7

*St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*,
    566 F. Supp. 3d 327 (D. Md. 2021) ................................................................ 7

*W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*,
    874 F. Supp. 2d 526 (E.D. Va. June 18, 2012) ............................................... 5

*Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*,
    2017 WL 3706344 (E.D. La. Aug. 28, 2017) .................................................. 5

**Other Authorities**

Fed. R. App. P. 8 .......................................................................................................... 2

Fed. R. Civ. P. 62 .................................................................................................. 1, 2, 9

Fed. R. Civ. P. 65 .......................................................................................................... 6

iii

# I. INTRODUCTION

As creatures of equity, injunctions must be crafted to fit the facts of each case. To ensure parties are on fair notice of the scope of an injunction, both the rules of procedure and fundamental fairness require that injunctions set out the will of the Court in clear, plain terms, so that they can be followed. For this reason, the rules governing injunctions both in the district courts and on appeal provide for the power to adjust injunctions when necessary. Natera seeks to prevent the Court from exercising its equitable discretion to amend the terms of equitable relief, even though the injunction has not yet come into force. Natera's procedural attack on the Court's power is both wrongheaded and unsupported by relevant authority. On the merits, NeoGenomics respectfully suggests that the equities weigh in favor of the Court making limited amendments to the injunction, both to comply with the bond requirements and to limit the harm to the public. In particular, clinical trials that are already far along in the planning and approval stages should not be halted, as doing so would impede ongoing cancer research and harm patients.

# II. DISCUSSION

## A. The Court Has Jurisdiction To Grant The Requested Relief

Federal Rule of Civil Procedure 62(d) states that district courts retain the power to modify a PI pending appeal:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

1

Indeed, Federal Rule of Appellate Procedure 8(a)(1)(C) *requires* that a movant first present a motion to modify an injunction to the district court. It is plain that under the pertinent rules, this Court may entertain a motion to modify while an appeal is pending.

Moreover, the Fourth Circuit encourages the modification of injunctions on appeal where the modification results in resolving thorny appellate issues.[1] Accordingly, the Fourth Circuit has "held that in modifying an injunction to correct a clear error during the pendency of an appeal of that injunction, a district court did just that—aided the appeal and avoided the unnecessary expenditure of appellate resources." *George Sink PA Injury Lawyers v. George Sink II Law Firm LLC*, 2019 WL 6318778, at *4 (D.S.C. Nov. 26, 2019) (citing *Dixon v. Edwards*, 290 F.3d 699, 720 n.14 (4th Cir. 2002)); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) (district court may modify to "promote judicial efficiency"). And the Fourth Circuit has confirmed that Rule 62(d) "applies to allow the district court to make provision for the 'security of the rights of the adverse party'" during the pendency of an appeal. *Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135, 1139 (4th Cir. 1978).

Without grappling with the binding rules or precedent, Natera cites instead to a three-paragraph unpublished Federal Circuit order, *Fairchild Semiconductor Corp. v.*

---

[1] On this procedural question, the Federal Circuit applies regional circuit law, here Fourth Circuit law. *See Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1450 (Fed. Cir. 1988) (applying regional circuit law to evaluate district court's jurisdiction pending appeal); *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234, 237 (Fed. Cir. 1986) (same).

2

*Third Dimension (3D) Semiconductor, Inc.*, 2009 WL 790105, *1 (Fed. Cir. Mar. 25, 2009), but it paints the dicta in that case with far too broad a brush. The summary *Fairchild* order ultimately held that the district court retained the power to act following appeal, on facts different from those here. Rejecting a similar tack, one district court concluded that the *Fairchild* summary order "is *dicta*" that "provides an over-broad characterization" of the cases it cites. *Anderson v. TOL, Inc.*, 940 F. Supp. 2d 766, 770 (M.D. Tenn. 2013). *Fairchild* is neither binding, nor relevant, authority and is certainly an insufficient statement to strip this Court of the power to act.

Moreover, none of the cases Natera cites addressed a circumstance like this, in which the injunction has not yet go into effect due to the lack of the required security under Rule 65(c). And as a matter of practicality, denying the motion on ground of lack of jurisdiction would only result in a wasteful trip to the Federal Circuit, which is likely to send the parties back down for a decision from this Court in the first instance. Neither the rules of procedure, nor the basic principles of equity, require such wasteful litigation. Addressing the issues that are the subject of this motion expeditiously would act in aid of, not interfere with, the appeal.

> **B. The Court Should Modify Or Clarify The Scope Of The Injunction To Avoid The Unwarranted Restraint On Lawful Activity**

Natera does not dispute that an "injunction cannot impose unnecessary restraints on lawful activity." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Here, the injunction would prohibit the manufacture and sale of RaDaR related

3

products in the U.S., even if the ultimate use is overseas. Because the patent at issue only covers the method of use, not manufacture, as a matter of law the injunction is overbroad. The U.S. patent laws do not prohibit the use of inventions outside its borders, and Natera should not be permitted to invoke the powers of this Court to obtain extraterritorial reach.

Natera argues that "[e]ven if some steps of RaDaR are performed abroad, NeoGenomics would still infringe the asserted claims of the '035 Patent by making, offering for sale, or selling the method claim in the United States." D.I. 186 at 12. That is not the law, and noticeably absent from Natera's opposition is any discussion of *NTP, Inc. v. Rsch. In Motion*, 418 F.3d 1282 (Fed. Cir. 2005), the lead case on this issue. *See* D.I. 183, at 5. There, the Federal Circuit considered "whether a sale of a claimed method can occur in the United States, even though the contemplated performance of that method would not be wholly within the United States." 418 F.3d at 1318. Observing that a sale typically requires "a thing capable of being transferred," the *NTP* court noted that "[i]t is difficult to apply this concept to a method claim consisting of a series of acts." *Id.* at 1319. The court then noted that "Congress has consistently expressed the view that it understands infringement of method claims under section 271(a) to be limited to use." *Id.* Finally, the Federal Circuit concluded:

> We would require a clear and certain signal from Congress before approving the position of a litigant who, as respondent here, argues that the beachhead of privilege is wider, and the area of public use narrower, than courts had previously thought. The indication we have from Congress on infringement by selling or offering to sell method claims shows that it believes the beachhead is narrow.

4

Case 1:23-cv-00629-CCE-JLW    Document 189    Filed 01/05/24    Page 8 of 18

*Id.* at 1320 (quotation marks omitted). The Federal Circuit then resolved the case on other grounds. *See id.* at 1321.

Lower courts since then have held that the best reading of the precedent and statute is that a method patent cannot be infringed by a sale or offer to sale. *Isis Pharms.*, 2014 WL 2531973, at *4; *see also W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 874 F. Supp. 2d 526, 545 (E.D. Va. June 18, 2012); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 695 F. Supp. 2d 680, 688 (S.D. Ohio 2010). Natera describes its contrary position as the "majority view," D.I. 186 at 13, but that is simply wrong: After *NTP*, "district courts have generally held that a method claim may be infringed only by use," and only "a few district courts have taken the opposite view," *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 2017 WL 3706344, at *4 (E.D. La. Aug. 28, 2017). At minimum, even by Natera's admission, the district courts are split, and this Court should allow the parties to develop this issue more broadly before it renders a far-reaching decision to enjoin foreign activity.[2]

Natera's last argument on this point is that NeoGenomics waived its "[n]ew '[n]on[i]nfringement [t]heory." D.I. 186 at 11. That is wrong because NeoGenomics is not offering a new argument for why it does not *currently* infringe the '035 Patent (it does

---

[2] Those handful of courts cited by Natera that have held otherwise have relied principally on *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), a case about the requirement of patent exhaustion that the Federal Circuit has already said does not apply in the *infringement* context, *see Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1362–63 (Fed. Cir. 2009).

5

not)—it is pointing out that the injunction is overbroad on its face in what it prohibits NeoGenomics from doing *prospectively*. And this issue was raised earlier, as NeoGenomics *made this exact point* with respect to noninfringement of the '454 Patent, even citing many of the same cases. *See* D.I. 162 Findings of Fact ¶¶ 74–79, Conclusions of Law ¶¶ 19–21. The issue is an overbroad injunction, not the application of the '035 Patent to past conduct.

In sum, a method patent is not infringed by the sale or offer for sale in the U.S. of a product using the method outside the U.S.; it is only the *use* that infringes, and Natera does not dispute that such use is infringing only if it occurs in the U.S. *See NTP*, 418 F.3d at 1318. Tellingly, Natera's Complaint alleges direct infringement of the '035 Patent based *only* on NeoGenomics's "performing, or directing or controlling the performance of [RaDaR] within the United States. D.I. 1 ¶ 56. The PI is thus overbroad in that it purports to enjoin NeoGenomics from lawfully selling or offering to sell in the US products that use the method steps overseas, which constitutes reversible error.

### C. The Court Should Require Natera To Post Security

Natera does not dispute that Rule 65(c) *requires* a district court to "fix a bond whenever it grants a PI or restraining order." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). It incorrectly argues, though, that NeoGenomics has failed to substantiate its request for a $400 million security. D.I. 186 at 14.

Security amounts are decided based on the potential harm to the enjoined party. *Hoechst Diafoil*, 174 F.3d at 421 n.3. In assessing that harm, the Court must be mindful

6

that "an understated bond could cause irreparable harm on the ground that the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 n.14 (M.D.N.C. 2015) (quotation marks omitted). Accordingly, "district courts should err on the *high side*," because while "[a]n error in setting the bond too high . . . is not serious," an "error in the other direction produces irreparable injury." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 382 (D. Md. 2021) (emphasis added) (quotation marks omitted).

Injury to an enjoined party can include "potential lost profits, lost market share and associated costs of relaunch in the event of wrongful enjoinment." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006) (quotation marks omitted) (affirming bond of $400 million for patent infringement PI). The price NeoGenomics paid to acquire RaDaR is a reasonable proxy for the value of that product and the value that will be lost during the term of the PI (which could last for years, even though it is based on a limited record). Moreover, there are many other costs—arising out of the expiration of "raw materials," abandonment of "marketing materials and promotional opportunities," "fees to agencies and professionals," "depreciation of equipment," "costs to redeploy the sales force and other personnel," and "storage costs" of raw materials, D.I. 183-1 ¶ 15; *see also* D.I. 119 ¶¶ 101–03—that are not even accounted for in the security requested by NeoGenomics. The stock drop is relevant not because of its direct impact, but because it is indicative of the value an efficient market has assigned to the significance of the preliminary injunction.

7

Calculating the appropriate security is necessarily an imprecise exercise, but the evidence firmly establishes a realistic probability—not a "remote" risk—of substantial harm. *Hoechst Diafoil*, 174 F.3d at 421 n.3.[3]

Natera claims also that NeoGenomics is harmed because a new version of RaDaR that will not even be available for another year purportedly will "work[] around NTRA's IP." D.I. 186 at 10. That is not correct—Natera cites to analyst reports that relayed what their authors believe NeoGenomics "implied" in a recent analyst call. D.I. 188-1 at 1; *see also* D.I. 188-2 at 2. But one of the reports admits that NeoGenomics did not say "explicitly" that version 2 of RaDaR will not infringe, and in fact, that is not an accurate representation of NeoGenomics's position (and it has already advised the analysts as much).

Natera yet again raises a procedural objection as well, claiming that NeoGenomics waived the security requirement. D.I. 186 at 17–18. A district court "must expressly address the issue of security before allowing any waiver and cannot disregard the bond requirement altogether." *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (quotation marks omitted). Natera cites cases from other jurisdictions suggesting that a failure to request a security in PI briefing may waive the requirement, but that is not the law in the

---

[3] Natera argues that because Natera has not prosecuted this case maliciously, NeoGenomics cannot recover under the bond. D.I. 186 at 16–17 (citing *Greenwood County v. Duke Power Co.*, 107 F.2d 484, 487 (4th Cir. 1939)). The case excerpt Natera cites, however, is discussing limitations on the recovery of *damages*—the same case goes on to explain that *restitution* is recoverable upon vacatur of a PI. *Greenwood County*, 107 F.2d at 488.

Fourth Circuit, where even if "defendants failed to ask for a bond, the court's failure to [address the issue] is reversible error." *George Sink PA Injury Lawyers*, 2019 WL 6318778, at *8.[4]

### D. Clarification Of The PI Would Advance Patient Care And Fits Within The Intended Scope Of The PI

NeoGenomics requests clarity regarding three discrete aspects of the PI, one of which is no longer in dispute and all of which fall within the intended scope of the PI.

NeoGenomics first seeks clarification regarding the performance of seven contracts where the contract is nearly finalized, a protocol has been drafted, and for which RaDaR has been chosen as the preferred MRD assay by the client. To be clear, NeoGenomics does not believe a modification to the PI is necessary: The contracts identified by NeoGenomics are within the scope of paragraph 3 of the injunction, which exempts from the PI the use of RaDaR "in support of research and development . . . on projects or studies that began before the entry of this injunction" or "for use in or support of clinical trials in process or already approved by an agency of the United States." D.I. 171 ¶ 3. But to the extent there is any ambiguity, a non-substantive clarification is fully within the Court's discretion. *See George Sink PA Injury Lawyers*, 2019 WL 6318778, at *4.

---

[4] Natera suggests in passing that the Court may lack jurisdiction over this request as well, overlooking that Rule 62(d) specifically states that a court may "modify" an injunction "on terms for bond." Fed. R. Civ. P. 62(d); *see also George Sink PA Injury Lawyers*, 2019 WL 6318778, at *4.

9

Natera urges the Court to arbitrarily draw the line at tests where "no patient samples have yet been collected," D.I. 186 at 19, but that goes against all sense in clinical research, a field and fact of which Natera should be aware. It makes no difference to a pharmaceutical client or academic institution whether a patient's blood has been physically drawn: What matters is the time and resources already dedicated to the trial—including patient recruitment, protocol development, and staffing for trials—and Natera does not dispute that all seven of these trials are sufficiently advanced such that moving away from RaDaR would impose significant costs on third parties and potentially delay the availability of life-saving testing for cancer patients. *See* D.I. 183-1 ¶¶ 3–5. Respectfully, NeoGenomics believes that is precisely the issue the Court intended to solve with paragraph 3. *See* D.I. 169 at 21.

Moreover, as NeoGenomics has pointed out several times, the higher sensitivity of RaDaR and its ability to test certain samples that Signatera cannot makes it the *only* option for some clinical trials. D.I. 112 ¶¶ 30–39; D.I. 115-12. That is the case with the contracts NeoGenomics identified in its motion: Those trials "cannot proceed without the high sensitivity of RaDaR" and would thus likely have to be cancelled. D.I. 183-1 ¶¶ 3–5. And even if Natera's test could be substituted, the trials would be significantly delayed while protocols are redesigned and subsequently reviewed again by the relevant boards, and while new analytical laboratories are vetted and, if possible, qualified. *Id.* ¶¶ 4–5. Despite its objections, Natera has failed to submit any evidence to the contrary. D.I. 112 ¶¶ 29–39, 43.

As for the issue of scientific reporting, NeoGenomics also believes clarification is warranted to avoid unnecessary dispute and to advance critical research and development. Natera does not appear to disagree in principle, but vaguely objects that such reporting is infringing if it includes "offers to sell RaDaR, sale of RaDaR, or performance of RaDaR." D.I. 186 at 22. NeoGenomics simply seeks freedom from dispute that it may report on the scientific performance of RaDaR. Natera's offhand demand that NeoGenomics be required to reference the Court's PI in any such publications or presentations is unsupported and inappropriate, and it falls outside the norms, scope, and purpose of scientific reporting.

Natera does not object to the testing of fewer than 100 patient samples taken before the PI's effective date. Those tests should be treated like every other test for purposes of damages and discovery, and there is no justification for any additional strings to be attached to the pro-patient request. It is telling that Natera anticipates seeking damages for this compassionate use, when they themselves acknowledge they control 74% of the market share of all MRD testing, valued at $20 billion per annum. D.I. 112 ¶ 17; D.I. 186-2. Natera's request smacks of greed and indifference to patient care.

### III. CONCLUSION

For the foregoing reasons, NeoGenomics respectfully requests that the Court grant NeoGenomics's motion to modify and clarify.

This the 5th day of January 2024

By: /s/ *Edward R. Reines*
Edward Reines (CA Bar No. 135960)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3022
Facsimile: (650) 802 3100
Edward.reines@weil.com

*/s/ John F. Morrow, Jr.*
John F. Morrow, Jr. (N.C. Bar No. 23382)
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336.721.3584
Facsimile: 336.733.8429
John.Morrow@wbd-us.com

*Counsel for Defendant NeoGenomics Laboratories, Inc.*

12

# CERTIFICATE OF WORD COUNT

The undersigned counsel hereby certifies that this brief complies with the word count limitations of Local Rule 7.3(d).

Dated: January 5, 2024

By: /s/ *Edward R. Reines*
Edward Reines (CA Bar No. 135960)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3022
Facsimile: (650) 802 3100
Edward.reines@weil.com

# CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024, I electronically filed the foregoing **DEFENDANT NEOGENOMICS LABORATORIES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO MODIFY AND/OR CLARIFY** with the Clerk of Court using the CM/ECF system.

Dated: January 5, 2024

By: /s/ *Edward R. Reines*
Edward Reines (CA Bar No. 135960)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3022
Facsimile: (650) 802 3100
Edward.reines@weil.com